UNITED STATES DISTRICT COURT JUDGE RONALD GUZMAN
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGISTRATE JUDGE GILBERT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **13 CR 0759** |
| | ) | |
| v. | ) | Violation: Title 18, United |
| | ) | States Code, Section 1343 |
| JOSEPH CABELLO, | ) | |
| THOMAS O'MALLEY, and | ) | **FILED** |
| JAMES CARLSON | ) | |

SEP 2 4 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

The UNITED STATES ATTORNEY charges:

1.     At times material to this Information:

a.     Defendants JOSEPH CABELLO, THOMAS O'MALLEY, and JAMES CARLSON owned and operated ATS Uptime, Inc., which had offices in Chicago, Illinois and Oswego, Illinois. Defendant CARLSON was the President of ATS, and defendant O'MALLEY acted as the Chief Financial Officer, Office Manager, and bookkeeper for the company. Defendant CABELLO managed the Oswego office. All three defendants were involved in running the company.

b.     ATS was in the business of servicing and loading ATM machines on behalf of its clients, which included placing money into ATM machines, replenishing funds, collecting deposits, and maintaining ATM machines. Each of the defendants handled cash, and loaded money into ATM machines in the Chicago area.

c.     ATS had approximately 13 clients, and ATS serviced approximately 800 ATM machines. Some clients supplied their own cash for use in their ATM machines, and other clients arranged for a third party to supply cash for their ATM machines. ATS used

armored cars to deliver and collect cash from the ATM machines.

   d.  ATS entered into agreements with clients, in which ATS agreed that it would use the client's funds only as directed by the client, and that the client's funds would be kept separate and would not be commingled with funds belonging to other clients. ATS also agreed to promptly notify its clients concerning the loss of any funds. ATS agreed to act as an agent for its clients in connection with the clients' cash.

   e.  ATS stored the clients' funds on shelves in safes that were located in walk-in vaults located at ATS's offices. There were specifically designated areas on the safes' shelves for each client's funds.

   f.  ATS was paid a fee by its clients for the services that ATS provided. ATS provided monthly invoices to the clients identifying the fees owed to ATS. ATS was not authorized by the clients to withdraw money from the clients' funds as payment for fees, or to benefit ATS or its representatives.

   g.  ATS routinely provided its clients with balance sheets, sent by email, purporting to inform each client of the amount of cash the client had on deposit in ATS's vault, among other information.

   2.  Beginning in or about 2005 and continuing until in or about December 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH CABELLO,
THOMAS O'MALLEY, and
JAMES CARLSON,

2

defendants herein, devised and intended to devise, and participated in, a scheme to defraud

ATS's clients, and to obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises, and by concealment of material facts, which scheme

is further described below.

3.      It was part of the scheme that defendants CABELLO, O'MALLEY, and

CARLSON fraudulently misappropriated, misused, and commingled funds belonging to

ATS's clients, without having authorization do so.  In order to conceal and cover up the

misappropriation and misuse of funds, defendants CABELLO, O'MALLEY, and CARLSON

fraudulently used funds belonging to certain clients to repay other clients, and to fill other

clients' ATM machines.  In order to convince clients to continue providing funds to ATS, and

to conceal the misappropriation and misuse of funds, defendants intentionally provided false

information to clients, in emails and through audits, concerning ATS's use of clients' funds,

the status of clients' funds, and the amount of money that ATS was holding for those clients.

Defendants' scheme resulted in a loss to ATS clients totaling at least approximately

$1,300,000.

4.      It was further part of the scheme that defendants CABELLO, O'MALLEY, and

CARLSON misappropriated clients' funds for their own purposes, including to pay business

expenses and personal expenses, and for use in personally owned ATMs.  Defendants

CABELLO, O'MALLEY, and CARLSON obtained additional funds from ATS's clients in

order to fill ATM machines and keep the business running.  Defendants intentionally

3

concealed from clients the misappropriation and misuse of clients' funds.

5.    It was further part of the scheme that defendants CABELLO, O'MALLEY, and CARLSON falsely represented, and caused others to falsely represent, to clients that ATS would and did use clients' funds only as directed by individual clients, that clients' funds would be and were kept separate, that ATS would not and did not commingle clients' funds, and that ATS would not and did not use clients' funds to fill other clients' ATM machines.

6.    It was further part of the scheme that defendants CABELLO, O'MALLEY, and CARLSON routinely moved cash from one client to another in order to cover the shortfall of cash.

7.    It was further part of the scheme that defendants CABELLO, O'MALLEY, and CARLSON caused ATS to email balance statements to clients, which contained false information pertaining to financial transactions that had recently occurred involving the client's funds, including deposits, withdrawals, transfers, the amount of funds loaded into ATM machines, and the amount of unused funds collected from ATM machines, and falsely overstated the cash balances that were in ATS's custody on the dates of the emails.

8.    It was further part of the scheme that defendants CABELLO, O'MALLEY, and CARLSON intentionally concealed from clients the misappropriation and the misuse of clients' funds, and intentionally failed to keep complete records accurately reflecting the misappropriation and misuse of the clients' funds.

4

9.    It was further part of the scheme that instead of completely filling certain ATM machines, defendants CABELLO, O'MALLEY, and CARLSON caused those ATMs to be only partially filled, in order to conceal the fact that ATS did not have enough money to completely fill those ATMs.

10.    It was further part of the scheme that, in order to conceal the misappropriation and misuse of client funds, defendants CABELLO, O'MALLEY, and CARLSON failed to report to clients, ATS's insurance company, and law enforcement officers certain losses and certain suspected thefts of funds by third parties, because they believed that such reports would cause audits that would uncover the misappropriation and misuse of clients' funds. The failure to report those losses and suspected thefts added to the shortfall of client funds.

11.    It was further part of the scheme that defendants CABELLO, O'MALLEY, and CARLSON intentionally deceived outside auditors who conducted audits for certain clients by using funds from other clients to conceal that funds were missing.

12.    It was further part of the scheme that the defendants misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

13.    As a result of this scheme, the defendants fraudulently caused a loss to clients totaling at least approximately $1,300,000.

14.    On or about October 14, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSEPH CABELLO,
THOMAS O'MALLEY, and
JAMES CARLSON,

defendants herein, for the purpose of executing the above-described scheme, did knowingly transmit and cause to be transmitted in interstate commerce, from Illinois to Minnesota, by means of wire communication, certain writings, signs, and signals, namely: an email from defendant O'MALLEY, who was located in Chicago, Illinois, with copies to defendants CABELLO and CARLSON, to one of ATS's clients, Client USB, located in Minneapolis, which email contained a completed questionnaire concerning ATS's audit process;

In violation of Title 18, United States Code, Section 1343.

Gary S. Shapiro by JBP
UNITED STATES ATTORNEY